UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH S. ALSTON, JR.,

                              Petitioner,

      v.                                                      5:04-CV-1049
                                                                   Related Criminal Action:
UNITED STATES OF AMERICA,                   5:02-CR-0054

                              Respondent.
_____

APPEARANCES                             OF COUNSEL

**JOSEPH S. ALSTON, JR.**
**11294-052**
FCI Fort Dix
Fort Dix, New Jersey 08640
Petitioner, *pro se*

**OFFICE OF THE UNITED**                ANDREW T. BAXTER, AUSA
**STATES ATTORNEY**
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Respondent

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND[1]

      On January 13, 2003, a federal grand jury sitting in the Northern District of New York returned a superceding indictment against Petitioner and others in which Petitioner was charged with knowingly and willfully executing a scheme to defraud Fleet Bank (the accounts of which

---

[1] The Court derived the background information relating to this action from materials that the parties submitted in conjunction with the present civil proceeding, *Alston v. United States*, 5:04-CV-1049 ("Action No. 04-CV-1049"), as well as the underlying criminal action, *United States v. Alston*, 5:02-CR-54 ("Action No. 02-CR-54").

the Federal Deposit Insurance Corporation insured) in violation of the federal bank fraud statute, 18 U.S.C. § 1344.[2] *See* Superceding Indictment, Action No. 02-CR-54, Dkt. No. 44 ("Superceding Indictment"), Count One. Petitioner was also charged with conspiracy to violate 18 U.S.C. § 1344, *see id.*, Count Two, as well as possession of counterfeit securities bearing the names of various companies located in New York State, *see id.*, Counts Three through Six.

Prior to trial, this Court dismissed Counts Three, Four and Five of the Superceding Indictment without prejudice based upon Respondent's motion, *see* Action No. 02-CR-54, Dkt. No. 76; and, on May 19, 2003, Petitioner proceeded to trial on the remaining charges in that accusatory instrument. On May 22, 2003, a jury convicted Petitioner on all of the remaining charges in the Superceding Indictment, after which this Court permitted Petitioner to remain on supervised release pending sentencing. *See* Action No. 02-CR-54, Dkt. No. 79.

On August 7, 2003, the Probation Department for the Northern District of New York prepared a Pre-Sentence Investigation Report ("PSR") relating to Petitioner. In that report, the Probation Department determined that Fleet Bank had cashed $49,258.36 worth of fraudulent checks and that Petitioner intended to defraud Fleet Bank out of an additional $18,887.05 through other checks that law enforcement agents had discovered but which had not yet been cashed. *See* PSR at ¶¶ 8, 12. That report also proposed that the base offense level for Petitioner's crime under the United States Sentencing Guidelines ("USSG") was 6. It further proposed that the Court add 6 levels to Petitioner's base offense level because the actual and intended loss to the victim totaled $68,145.41, *see id.* at ¶¶ 19-20, and that the Court add 4 levels to Petitioner's

---

[2] The same grand jury returned the original indictment against Petitioner and others on February 14, 2002. *See* Indictment, Action No. 02-CR-54, Dkt. No. 10.

base offense level due to his role as an organizer or leader of the criminal activity relating to Fleet Bank. *See id.* at ¶ 22. Since Petitioner had no prior criminal convictions, his criminal history category of I, together with his total offense level of 16, resulted in a sentencing guideline range of between 21 to 27 months. *See* PSR at ¶ 47.

The Government objected to the base offense level proposed in the PSR. Specifically, in its sentencing memorandum, the Government argued that, in addition to the $68,145.41 total loss figure referenced in the PSR, the Court should also hold Petitioner accountable for other uncashed, fraudulent checks totaling $17,479.62, which were discovered during the course of the underlying criminal investigation, thereby bringing the total intended loss figure attributable to Petitioner to $85,625.03. *See* Government's Sentencing Memorandum, Action No. 02-CR-54, Dkt. No. 93 ("Gov. Sent. Mem."), at 2.[3] Since the total intended loss relating to Petitioner's criminal conduct exceeded $70,000.00, the Government argued that the "loss enhancement" applicable to Petitioner was 8, rather than the 6 level enhancement reflected in the PSR. *Compare* Gov. Sent. Mem. at 2 *with* PSR at ¶ 20.[4]

On December 8, 2003, Petitioner appeared before this Court for sentencing. At that proceeding, Petitioner's counsel argued that Petitioner should be subject to, at most, a 3 level upward adjustment attributable to his role in the criminal conduct. *See* Transcript of Sentencing of Joseph S. Alston (12/8/03) (Action No. 04-CV-1049, Dkt. No. 8) ("Sentencing Tr.") at 2-3.

---

[3] The Government alternatively argued that this Court could properly hold Petitioner accountable for a total intended loss of $92,025.03, based upon the total value of uncashed checks that law enforcement agents eventually discovered. *See* Gov. Sent. Mem. at 2.

[4] The Government's position relating to the loss enhancement for which it claimed that the Court should hold Petitioner accountable was based upon the provisions of U.S.S.G. § 2B1.1(b)(1)(E).

Petitioner's counsel further argued that the total intended loss relating to Petitioner's criminal conduct was less than $70,000.00, and that, as a result, the adjustment to Petitioner's base offense level should be increased by no more than 6 levels. *See* Sentencing Tr. at 3-4; *see also* U.S.S.G. § 2B1.1(b)(1)(D).

This Court ultimately concluded that the evidence "clearly support[ed]" a finding that the total loss relating to Petitioner's criminal conduct exceeded $70,000.00, *see id.,* and that Petitioner was a manager, organizer or leader of the conspiracy. Consequently, this Court determined that Petitioner was subject to a Guideline range of imprisonment of between 27 to 33 months and sentenced Petitioner principally to a term of imprisonment of 27 months for his convictions on Counts One, Two and Six of the Superceding Indictment. *See id.*

Thereafter, Petitioner filed a Motion to Vacate, Set Aside or Correct his sentence in this District on September 3, 2004. *See* Action No. 04-CV-1044, Dkt. No. 1 ("Motion to Vacate"). In his application, Petitioner appears to assert two distinct claims: (1) that he received ineffective assistance of counsel and (2) that this Court committed error in determining his total offense level and the corresponding range of imprisonment to which it subjected him. *See id.* at 4.

## II. DISCUSSION

A.   **Ineffective Assistance of Counsel**[5]

The Supreme Court has articulated a two-pronged test that courts must use to determine whether a criminal defendant has received the ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 688-90, 694 (1984). To establish ineffective assistance, a party must show (1) "that counsel's representation 'fell below an objective standard of reasonableness,'" and (2) prejudice, i.e., that "'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Garcia*, 413 F.3d 201, 219 n.13 (2d Cir. 2005) (quotation omitted); *Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001) (quotation omitted); *United States v. Champion*, 234 F.3d 106, 109 (2d Cir. 2000) (citation omitted); *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir. 1998) (per curiam) (citations omitted).

In support of his ineffective-assistance-of-counsel claim, Petitioner contends (1) that his attorney failed to argue that the sentence that this Court imposed on him violated the rule that the Supreme Court adopted in *Apprendi*,[6] *see* Motion to Vacate at 4; and (2) that his attorney improperly failed to argue that the amount of loss involved in the criminal conspiracy was no

---

[5] The Court notes that, although Plaintiff may be procedurally barred from raising some of his claims because he did not directly appeal from either his conviction or his sentence, the Supreme Court has clearly held that a petitioner may assert an ineffective-assistance-of-counsel claim for the first time in a collateral proceeding under § 2255 "whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also Nelson v. United States*, 380 F. Supp. 2d 100, 105-06 (N.D.N.Y. 2005) (citation omitted). Thus, Petitioner is not procedurally barred from asserting the ineffective assistance claims discussed herein. *See, e.g., Warren v. United States*, Nos. 04 Civ. 3631, 02 CR. 104, 2005 WL 1653917, *4-*5 (S.D.N.Y. July 13, 2005) (determining that all claims asserted in § 2255 action other than one alleging ineffective assistance of counsel were barred due to the petitioner's failure to pursue direct appeal of conviction and sentence).

[6] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

more than $43,156.31, *see* Motion to Vacate at attached 16-17.

### 1. *Apprendi* Claim

Petitioner initially claims that his attorney improperly failed to argue at sentencing that both the sentence that the Government had asked the Court to impose on Petitioner, as well as the sentence that this Court ultimately imposed on him, violated the Supreme Court's holding in *Apprendi*. *See* Motion to Vacate at 4. Specifically, Petitioner argues that the 8 point increase in his base offense level attributable to the loss to the victim "f[e]ll within the windfalls of the *Apprendi* rule" but that his counsel nevertheless "failed to argue that the increase did not as a matter of law reach the minimum requirement of loss to warrant the enhancement." *See* Motion to Vacate at attached 16-17.

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490; *see also United States v. Fruchter*, 411 F.3d 377, 381 (2d Cir. 2005) (quotation omitted). However, "*Apprendi's* protections apply only where the sentence imposed exceeds the statutory maximum." *United States v. King*, 345 F.3d 149, 152 (2d Cir. 2003), *cert. denied*, 540 U.S. 1167 (2004) (citation omitted). Thus, as the Second Circuit observed in *Coleman v. United States*, 329 F.3d 77 (2d Cir.), *cert. denied*, 540 U.S. 1061 (2003), where the petitioner's sentence

> does not exceed the otherwise applicable statutory maximum, the sentence does not violate *Apprendi*. *See United States v. Luciano*, 311 F.3d 146, 150 (2d Cir. 2002) ("The touchstone of the constitutional inquiry under *Apprendi* is whether the sentence actually imposed . . . exceeds the statutory maximum that would

> have applied in the absence of such a finding."); *see also* [*United States v.*] *Thomas* [], 274 F.3d [655,] 664 [(2d Cir. 2001)] ("The constitutional rule of *Apprendi* does not apply where the sentence imposed is not greater than the prescribed statutory maximum for the offense of conviction.").

*Coleman*, 329 F.3d at 90 (Parker, J., concurring in judgment); *see also Rogers v. United States*, 390 F. Supp. 2d 196, 200 (N.D.N.Y. 2005) ("*Apprendi* only applies to sentences beyond the prescribed statutory maximum" (citation omitted)).

In the underlying criminal matter, a jury convicted Petitioner of, among other things, bank fraud in violation of 18 U.S.C. § 1344 & Sect. 2. *See* Superceding Indictment, Count One; Judgment of Conviction, Action No. 02-CR-54, Dkt. No. 109 ("Judgment"), at 1. The statutory maximum term of imprisonment for a conviction for that crime is thirty-years imprisonment. *See* 18 U.S.C. § 1344(2) (noting that individuals convicted of such crime "shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both"); *see also United States v. Postemus*, No. 03 CR. 324, 2003 WL 22845780, *2 (S.D.N.Y. Dec. 1, 2003). This Court sentenced Petitioner to a term of 27-months imprisonment. *See* Sentencing Tr. at 11; Judgment at 2. Since Petitioner's sentence clearly did not exceed the applicable statutory maximum, any *Apprendi*-based argument at Petitioner's sentencing would have been meritless. *See Coleman*, 329 F.3d at 90 (citations omitted). Thus, counsel's failure to raise such an argument was not objectively unreasonable. *See, e.g., Mackenzie v. Portuondo*, 208 F. Supp. 2d 302, 319 (E.D.N.Y. 2002) ("'The failure to include a meritless argument does not fall outside the "wide range of professionally competent assistance" to which Petitioner was entitled'" (quoting *Aparicio v. Artuz*, 269 F.3d 78, 99-100 & n.10 (2d Cir. 2001))).[7]

---

[7] Petitioner does not clearly argue, in either his Motion to Vacate or in his February 2005 Supplement, that his attorney rendered ineffective assistance in failing to anticipate the Supreme
(continued...)

### 2.    *Amount of Loss Involved in the Criminal Conspiracy*

Petitioner also contends that his attorney wrongfully failed to challenge the Government's argument that the loss that the victim sustained as a result of Petitioner's conduct exceeded $70,000.00. *See* Motion to Vacate at attached 16-18. This argument is meritless. In his sentencing memorandum, Petitioner's counsel specifically noted his objection to "the Total Loss

---

[7](...continued)
Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), or *United States v. Booker*, 543 U.S. 220 (2005). However, this Court is mindful of the Second Circuit's command that courts must view *pro se* submissions liberally. *See Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) ("just as *pro se* complaints 'must be liberally construed,' . . . a district court must review a *pro se* petition for collateral relief 'with a lenient eye . . .'" (internal quotations omitted)). Since Petitioner cites both *Blakely* and *Booker* in the submissions he has filed in support of his request for relief, *see* Motion to Vacate at attached 3-9; February 2005 Supplement (*passim*), this Court liberally construes Petitioner's submissions as alleging counsel's ineffective assistance with respect to the Supreme Court's decisions in *Blakely* and *Booker*.

The Supreme Court decided both *Blakely* and *Booker* after this Court sentenced Petitioner on December 8, 2003. An attorney's performance under *Strickland* "must be judged as of the time of counsel's conduct . . . ." *Muniz v. United States*, 360 F. Supp. 2d 574, 579 (S.D.N.Y. 2005) (citation omitted). As the Second Circuit has noted, "[c]ounsel is not required to forecast changes in the governing law." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted). Consequently, courts within this Circuit have uniformly held that counsel cannot be found to have rendered ineffective assistance by failing to anticipate the Supreme Court's decisions in *Blakely* and *Booker*. *See Gallego v. United States*, No. CV 045584CPS, 2005 WL 1398089, *4 (E.D.N.Y. June 13, 2005) (counsel not ineffective in failing to anticipate *Blakely* or *Booker* (citations omitted)); *United States v. Cole*, No. 1:03-CR-26-01, 2005 WL 1278519, *5 (D. Vt. May 26, 2005) (same); *Swerbilov v. United States*, No. 04-CV-3320, 2005 WL 1177938, *4 (E.D.N.Y. May 18, 2005) (rejecting claim that counsel rendered ineffective assistance in failing to anticipate *Blakely*, concluding that "an attorney can[not] be ineffective for failing to anticipate future changes to the law"); *Muniz*, 360 F. Supp. 2d at 579 (petitioner's attorney "cannot be deemed ineffective for failing to anticipate a potential Sixth Amendment challenge as alleged in *Booker*" (citation omitted)).

Therefore, even construing Petitioner's submissions liberally as alleging that his attorney rendered ineffective assistance in failing to anticipate *Blakely* or *Booker*, this Court finds any such claims to be without merit.

calculation which the Government claims applies to the Guidelines calculation." *See* Action No. 02-CR-54, Dkt. No. 97 ("Def. Sentencing Mem."), at 2.  Counsel thereafter argued at length in his sentencing memorandum that the total loss attributed to Petitioner in the PSR, and which the Government advocated, was improper, *id.* at 2-6, and maintained that "the correct figure for calculating the intended loss is $58,061.31." *See id.* at 6.  Counsel claimed that, because the total loss was less than $70,000.00, the Court should increase Petitioner's base offense level by only 6 additional levels. *See id.*  Counsel reiterated these arguments at sentencing. *See* Sentencing Tr. at 3-4.  Moreover, the record conclusively establishes that Petitioner's counsel argued – albeit unsuccessfully – that the total loss attributable to Petitioner for his criminal conduct was greater than $30,000 but less than $70,000. *See* Def. Sentencing Mem. at 6-7; *see also* Sentencing Tr. at 3-4

**B.    Claimed Error by this Court at Sentencing**

It is not clear whether Petitioner intended to assert alleged error on the part of this Court at his sentencing as a separate ground for relief herein or merely as part of his claim alleging ineffective assistance.  However, even assuming that Petitioner did intend to assert such a claim, it is without merit.

Petitioner's argument that this Court erred in its factual findings at his sentencing are based upon his claims that this Court (1) lacked the authority to make such factual findings in light of *Apprendi*, *see* Motion to Vacate at attached 3-5, and(2) committed error in calculating the

total intended loss attributable to Petitioner's conduct, *see id.* at 4-5.[8]

### 1. *Apprendi*

To the extent Petitioner argues that the Court's fact finding at sentencing constituted error in light of *Apprendi*, *see* Motion to Vacate at attached 4, the Court notes, once again, that *Apprendi* only applies in cases in which the sentence that the court imposed exceeded the statutory maximum. *See* Discussion *supra* at 6-7; *see also United States v. Norris*, 281 F.3d 357, 359 (2d Cir. 2000) (holding that, notwithstanding *Apprendi*, where a court sentences a criminal defendant below the statutory maximum, district courts may properly determine the enhancements to be applied to an individual's base offense level based upon a preponderance of the evidence presented at sentencing). Thus, because this Court sentenced Petitioner to a term of 27-months imprisonment, which was well below the statutory maximum, the standard of proof that this Court used to determine Petitioner's total offense level at his sentencing was entirely consistent with *Apprendi*.[9]

---

[8] The Court notes that Petitioner concedes that he never directly appealed from his conviction or sentence. *See* Motion to Vacate at ¶ 8. The failure on the part of a federal inmate to file an appeal constitutes a procedural default on all claims based upon the record which the party subsequently seeks to raise in a motion to vacate brought pursuant to 28 U.S.C. § 2255. *See United States v. Pipitone*, 67 F.3d 34, 38 (2d Cir. 1995) (citations omitted); *Forrestal v. United States*, 187 F. Supp. 2d 37, 40 (N.D.N.Y. 2002) (holding that "'[a] motion under 2255 is not a substitute for an appeal'" (quoting *United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998))) (other citation omitted). Although this Court could properly raise the issue of Petitioner's procedural default *sua sponte* even though Respondent did not raise this argument in response to Petitioner's Motion to Vacate, the Court has decided to dispose of Petitioner's claim that this Court erred in calculating his sentence on its merits.

[9] Moreover, to the extent that Petitioner is requesting that this Court apply the Supreme Court's holdings in *Blakely* and/or *Booker* retroactively to this case, *see* Motion to Vacate at 7-
(continued...)

### *2. Calculation of Total Intended Loss*

Petitioner also appears to argue that this Court erred in calculating the total intended loss to Fleet Bank, and that, as a result, the Court improperly increased his base offense level by 8 levels. *See* Motion to Vacate at attached 4-5. Petitioner contends that this Court therefore erred in determining the range of imprisonment to which he was subject under the Guidelines. *See id.*

The PSR determined that Fleet Bank sustained a financial loss of $49,258.36 through payments it made on fraudulent checks presented to the bank as a result of the conspiracy to which Petitioner was a party. *See* PSR at ¶ 8. Petitioner was properly held accountable for this amount because it reflected the value of the fraudulent checks that Mr. Bovell cashed pursuant to Petitioner's instructions while Mr. Bovell was an employee of Fleet Bank. *See*, *e.g.*, *id.* Moreover that amount, when combined with the face value of the uncashed fraudulent checks that law enforcement agents discovered, clearly established that the intended loss to Fleet Bank exceeded $70,000.00. *See* Sentencing Tr. at 6-7; *see also* PSR at ¶ 12. In this regard, the Court notes that, where an individual is convicted of bank fraud under 18 U.S.C. § 1344, the total intended loss is properly calculated as the aggregate of the checks actually cashed as well as any

---

[9](...continued)
14; February 2005 Supplement at (unnumbered) 1-7, the Court notes that district courts may not retroactively apply these holdings to cases on collateral review. *See, e.g., Guzman v. United States*, 404 F.3d 139, 144 (2d Cir.) ("*Booker* is not retroactive, *i.e.*, it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005"), *cert. denied*, ___ S. Ct. ___, 2005 WL 3144193 (2005); *Green v. United States*, 397 F.3d 101, 103 (2d Cir. 2005) (neither *Booker* nor *Blakely* apply retroactively to a petitioner's application to file a second or successive petition (citation omitted)); *Barrett v. United States*, Nos. 04-CV-848, 95-CR-232, 2005 WL 1520849, *9 (N.D.N.Y. June 27, 2005) (*Booker* not retroactive to action brought pursuant to 28 U.S.C. § 2255); *United States v. Cedeno*, Nos. 02 CR. 1359-2, 05 Civ. 1846, 2005 WL 2218046, *4 (S.D.N.Y. Sept. 13, 2005) (neither *Blakely* nor *Booker* apply retroactively to § 2255 petitions (citations omitted)).

uncashed checks relating to the conspiracy. *See United States v. Kushner*, 305 F.3d 194, 196-98 (3d Cir. 2002) (holding that district court properly aggregated face amounts of both cashed and uncashed checks in ascertaining total intended loss in prosecution for bank fraud under 18 U.S.C. § 1344); *United States v. Robbio*, 186 F.3d 37, 43-44 (1st Cir. 1999) (holding that, where evidence supported determination that appellant intended to create and to present for payment additional counterfeit checks, district court properly considered value of both cashed and uncashed checks in determining intended loss of conspiracy); *United States v. Rizzo*, 121 F.3d 794, 801-02 (1st Cir. 1997); *see also*, *e.g.*, *United States v. Brown*, 7 F.3d 1155, 1159 (5th Cir. 1993) (holding that district court properly included face amounts of uncashed money orders that the appellant provided to law enforcement agents following discovery of conspiracy to violate 18 U.S.C. § 371; appellant "should not be rewarded simply because law enforcement officials thwarted his plans"); *United States v. Barbour*, 150 F. Supp. 2d 369, 375-77 & n.2 (N.D.N.Y. 2001) (total loss for mail fraud conviction under 18 U.S.C. § 371 included actual loss sustained by insurance company together with value of checks on which a stop payment order had been placed).

Since the total intended loss to Fleet Bank clearly exceeded $70,000.00, this Court properly added 8 levels to Petitioner's base offense level. *See* U.S.S.G. § 2B1.1(b)(1)(E). Moreover, in light of Petitioner's status as an organizer or leader of the subject criminal activity, this Court properly added 4 additional levels to his base offense level. *See* U.S.S.G. § 3B1.1(a); *see*, *e.g.*, *United States v. Gerstein*, 104 F.3d 973, 974, 977-81 (7th Cir. 1997). Thus, this Court properly determined Petitioner's total offense level to be 18, which subjected Petitioner to a range of imprisonment under the Guidelines of 27 to 33 months. *See* Sentencing Tr. at 11. In light of

the foregoing, the Court concludes that Petitioner's claim that this Court erred in imposing the 27-month sentence is without substance.

### III. CONCLUSION

After carefully reviewing the file in this matter, the parties' submissions, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Petitioner's Motion to Vacate, *see* Action No. 04-CV-1044, Dkt. No. 1, is **DENIED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order on the parties by electronic or regular mail.

**IT IS SO ORDERED.**

Dated: December 13, 2005
       Syracuse, New York

                                          Frederick J. Scullin, Jr.
                                          Chief United States District Court Judge